IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02194-PAB

RONALD R. ROGACKI, JR.,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on plaintiff Ronald R. Rogacki's complaint [Docket No. 1], filed on August 22, 2011. Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

Plaintiff applied for disability benefits on October 10, 2008, alleging that she had been disabled since October 6, 2008. Plaintiff's application was initially denied. Thereafter, an administrative law judge ("ALJ") held a hearing on June 22, 2010 and denied plaintiff's claim in a decision dated August 25, 2010.

---

[1]The Joint Case Management Plan indicates that neither party requests oral argument. See Docket No. 9 at 3, ¶ 9.

In the decision, the ALJ determined that plaintiff had the "following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the knees; depressive disorder; chronic narcotic dependence; and chronic obstructive pulmonary disease (COPD)." R. at 22. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments. R. at 22. The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 416.967(a) except he can occasionally lift 10 pounds and frequently less than 10 pounds; sit 2 hours per occasion and at least 6 hours in an 8-hour day, with the proviso that approximately every thirty minutes he can stand and stretch in the work area; and stand/walk each for 15 minutes and for a total combined 2 hours in an 8-hour day. The claimant should not climb ladders/scaffolds, kneel, crouch, or crawl, but otherwise can occasionally climb ramps/stairs, balance and stoop. He should not work with or near open and dangerous moving machinery or at unprotected heights. The claimant should avoid concentrated exposure to extreme cold, and should avoid even moderate exposure to fumes, odors, and pulmonary irritants. Mentally, the claimant can understand, remember and carry out those kinds of work instructions that can [be] learned in a period of up to 180 days, where there is only occasional work interaction with co-workers, supervisors, and the public.

R. at 24.

Based upon this RFC and plaintiff's age, education, and work experience, the ALJ concluded, in reliance on the testimony of a vocational expert ("VE"), that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform," R. at 31, and therefore that he was not disabled. *See* R. at 32.

The Appeals Council denied plaintiff's request for review of this denial. *See* R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues on appeal of the ALJ's decision (1) that the "ALJ failed to properly assess [plaintiff's] low back condition to determine whether it meets listing 1.04A for disorders of the spine," Docket No. 11 at 9; (2) that the ALJ did not properly weigh the medical opinions in the record; (3) that the hypothetical question posed to the VE was incomplete; and (4) that the ALJ improperly relied upon the VE's testimony despite its inconsistency with the RFC. Docket No. 11 at 5-6. The Court will address each of these arguments in turn.

#### 1. Listing 1.04A

At step three of the analysis, the ALJ concluded, *inter alia,* that plaintiff's back condition did not meet or equal the requirements of "listing 1.04 regarding disorders of the spine." R. at 23. Listing 1.04 describes "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R., pt. 404, subpt. P, app. 1, § 1.04. On appeal, plaintiff limits his arguments to the ALJ's consideration of § 1.04A.

*See* Docket No. 11 at 9; *see* Docket No. 13 (failing to rebut defendant's arguments regarding the ALJ's consideration of the 1.04A criteria or defendant's contention that plaintiff only challenges that aspect of the ALJ's step two analysis). To meet that listing, there must be evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss *and*, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* at § 1.04A (emphasis added). The ALJ concluded that there was no "evidence of nerve root compression, characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, or positive straight leg raising (sitting and supine)." R. at 23.

Plaintiff identifies what he believes to be evidence that could support certain § 1.04A criteria in regard to his lower back condition. *See* Docket No. 11 at 9-10. He does not, however, cite to any evidence of "positive straight-leg raising test (sitting and supine)." Furthermore, plaintiff offers no rebuttal to defendant's arguments regarding the ALJ's consideration of the § 1.04A criteria, which included the finding that there were no positive straight leg raising tests. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.") (emphasis in original). Consequently, the Court cannot conclude that the ALJ committed reversible error in this regard.

### 2. Medical Opinions

Plaintiff contends that the ALJ did not supply a sufficient explanation for affording

the opinion of David W. Yamamoto, M.D. "little weight."  Dr. Yamamoto completed a Physical Residual Functional Capacity Questionnaire at the request of plaintiff's counsel.  The ALJ found that Dr. Yamamoto "appears to have mostly performed a summary of the claimant's course of treatment," and that "this non-treating physician's opinions are more the result of writing down what the claimant subjectively reported, rather than based on objective exam findings."  R. at 29.  Plaintiff argues that there is some discrepancy between what plaintiff testified he told Dr. Yamamoto and what Dr. Yamamoto wrote in the questionnaire.  A review of Dr. Yamamoto's report and plaintiff's testimony, however, reveals that Dr. Yamamoto's opinion substantially conforms with plaintiff's subjective reports.  Furthermore, and in any event, the ALJ also stated that Dr. Yamamoto's "examination findings do not appear to be significantly different from what is found in the treating source medical evidence," R. at 29, and proceeded to explain why he found Dr. Yamamoto's opinions to be inconsistent with such medical evidence, plaintiff's reports of daily activities, and plaintiff's work activity.  The Court concludes that these constitute sufficiently detailed, legitimate reasons for affording Dr. Yamamoto's opinion little weight.  *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (noting that an ALJ must consider the opinion of a non-treating, examining physician and "provide specific, legitimate reasons for rejecting it").

      Plaintiff also argues that the ALJ improperly modified the opinion of Alan Lichtenberg, M.D., who performed a consultative examination of plaintiff in December 2008.  Dr. Lichtenberg opined that plaintiff can "sit for long periods of time with frequent breaks, stand for several hours with frequent breaks, walk for several hours with frequent breaks using a cane, lift 10-20 pounds, carry 5-10 pounds, bend rarely, squat

7

rarely[.]" R. at 256. As an initial matter, the Court notes that it is not entirely clear what Dr. Lichtenberg means when he says that plaintiff can engage in certain activities for "long periods" or "several hours" but also requires "frequent breaks." The ALJ stated that he "made a legitimate effort to have Dr. Lichtenberg clarify his interpretation of 'frequent'," but that "it appears [Dr. Lichtenberg] does not currently perform consultative evaluations for the State agency." R. at 28. The ALJ concluded that the requirement of "frequent breaks" was "not supported by any objective findings or definition of that term," and therefore was afforded "little weight." R. at 27-28. The ALJ gave the remaining aspect of the opinion "greater weight than th[e] opinions [of Dr. Yamamoto] in determining the claimant's physical residual functional capacity." R. at 28. Plaintiff argues that, in so doing, the ALJ "manipulated the meaning of Dr. Lichtenberg's opinion." Docket No. 11 at 13.

    The ALJ, however, did not adopt an RFC that is clearly inconsistent with Dr. Lichtenberg's opinion. For example, the ALJ limits plaintiff to sitting for two hours at a time and at least six hours in a work day, but adds the "proviso that approximately every thirty minutes he can stand and stretch in the work area." R. at 24. Plaintiff is further limited to standing or walking for 15 minutes at a time for a total of two hours in a work day. Plaintiff fails to explain how these limitations require more of plaintiff than "stand[ing] for several hours with frequent breaks" and "walk[ing] for several hours with frequent breaks using a cane." R. at 256. In sum, contrary to plaintiff's argument, the ALJ did not conclude that plaintiff could "sit for long periods of time," "stand for several hours," and "walk for several hours" without the need for periodic breaks. *See* Docket No. 11 at 13. Because plaintiff does not identify any other error in the ALJ's

assessment of Dr. Lichtenberg's opinion, the Court concludes that substantial evidence supports the ALJ's weighing of this medical evidence.

Plaintiff further contends that the ALJ did not adequately explain why he afforded the opinion of Stuart Kutz, Jr., Ph.D., who conducted a consultative psychological evaluation of plaintiff in January 2009, substantial weight while affording Dr. Yamamoto's opinion little weight. Dr. Kutz believed that plaintiff's "attention/concentration, as well as his persistence and pace and task completion seem[] mildly impaired," that plaintiff's "social adaptation is moderately impaired," and that plaintiff's "understanding and memory do not show any significant impairment." R. at 261. The ALJ noted that this opinion was "supported by the objective exam findings in this report." R. at 30. In contrast, as noted above, the ALJ found that Dr. Yamamoto's report did not appear to be "based on objective exam findings." R. at 29. Therefore, contrary to plaintiff's contention, the ALJ did "explain the controlling weight accorded to Dr. Kutz . . . while assigning little weight to Dr. Yamamoto." Docket No. 11 at 14; *see* 20 C.F.R. § 416.927(d) (listing the following factors to be considered when assessing medical opinions: examining relationship, treatment relationship, supportability, consistency with the record as a whole, and specialization); *cf. Mounts v. Astrue*, 2012 WL 1609056, at *6 (10th Cir. May 9, 2012) ("[W]e have held that it is not necessary for the ALJ to address each factor expressly or at length. As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[ ], [n]othing more [is] required[.]'") (citations omitted). The Court finds that the ALJ's "decision is 'sufficiently specific to make clear . . . the weight the adjudicator gave to the

. . . opinion[s] and the reasons for that weight.'" *Id.* (citation omitted).[2]

Finally, plaintiff argues that, although the ALJ gave Dr. Kutz's and Dr. Glasco's opinions "substantial weight," those opinions are inconsistent with the RFC. More specifically, plaintiff points out that Dr. Kutz opined that claimant's social adaptation is "moderately impaired." Docket No. 11 at 15. Plaintiff then cross references that impairment with the Psychiatric Impairment Rating Scale ("PIRS") in an attempt to demonstrate that it is inconsistent with the finding that plaintiff can "understand, remember and carry out those kinds of work instructions that can [be] learned in a period of up to 180 days." R. at 24. Plaintiff fails to supply the PIRS to the Court, indicate whether he provided it to the ALJ, or explain why the ALJ was nevertheless required to rely upon it. In any event, plaintiff relies heavily on an aspect of the PIRS that apparently relates to limitations in "adaption" to work requirements, *see* Docket No. 11 at 15-16, but fails to explain how that is relevant to the moderate limitation in "social adaptation." As the Commissioner points out, the ALJ relied upon Dr. Glasco's translation of the limitations found in the medical opinions, including Dr. Kutz's, when limiting plaintiff to "only occasional work interaction with co-workers, supervisors, and the public." R. at 24. Plaintiff has not shown that this limitation, along with the rest of the RFC, is inconsistent with the opinions upon which the ALJ relied.

---

[2]Plaintiff also argues that the ALJ erred by failing to address the medical opinion of Donald Glasco, M.D., *see* Docket No. 11 at 14, a state agency psychiatrist who completed a form entitled Mental Residual Functional Capacity Assessment. *See* R. at 221-24. The Commissioner was required to "consider the medical opinions in [plaintiff's] case record" and "make findings about what the evidence show[ed]." 20 C.F.R. § 416.927(b)-(c) (2010). The ALJ did address Dr. Glasco's opinion, *see* R. at 30, as revealed by plaintiff's additional argument that the ALJ did not "properly address[]" Dr. Glasco's opinion. *See* Docket No. 11 at 15.

### 3. Hypothetical Question

Plaintiff argues that the ALJ did not pose a complete hypothetical question to the VE because he omitted moderate limitations described by Dr. Kutz. This simply reasserts plaintiff's argument that the RFC is somehow inconsistent with Dr. Kutz's opinion. The Court rejected that argument above, and plaintiff does not otherwise contend that the hypothetical was somehow inconsistent with the RFC finding by the ALJ.

### 4. Reliance on VE's Testimony

At step five of the sequential analysis, the ALJ relied upon VE testimony identifying four jobs plaintiff could perform with his RFC. The first three jobs were categorized as "light exertion" positions by the Dictionary of Occupational Titles ("DOT"), but the VE testified that about half of the positions could be performed by somebody with plaintiff's limitations. Plaintiff contends that the ALJ failed to adequately address the inconsistency between the VE's testimony and the DOT in regard to those three jobs.

Even assuming, *arguendo*, that plaintiff is correct regarding the ALJ's reliance on the "light exertion" positions, the ALJ also relied upon the VE's testimony that plaintiff "would also be able to perform the requirements of representative [sedentary] occupations such as ticket checker . . ., with 1,400 jobs in Colorado and 71,100 nationally." R. at 31. Plaintiff does not argue that these numbers are insufficient to meet the Commissioner's burden at step five. *Cf. Botello v. Astrue*, 376 F. App'x 847, 850 (10th Cir. 2010) (declining to remand based on plaintiff's challenge to number of

jobs when jobs in Colorado equaled 757, but there were 67,250 jobs in the national economy); *see also Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("it appears to be well-established that 1,000 jobs is a significant number"). Therefore, any error by the ALJ regarding the other positions would be harmless.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is AFFIRMED.

DATED September 30, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge